UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MARKATOS,

       Plaintiff,

v.

       Case No. 09-14941
       Hon. Gerald E. Rosen
       Mag. Michael J. Hluchaniuk

AT&T CONSULTING SOLUTIONS, INC.
a foreign corporation,

       Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DKT # 16)**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    August 18, 2011

PRESENT:  Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff John Markatos commenced this suit on December 21, 2009, asserting a retaliation claim against Defendant AT&T Consulting Solutions, Inc. ("AT&T") for his job elimination following two months of leave authorized under the Family Medical Leave Act, 29 U.S.C. § 2601, ("FMLA"). Defendant AT&T filed the present amended motion for summary judgment on July 28, 2010, claiming that Plaintiff's termination was in no way related to his FMLA leave, and selecting Plaintiff for termination was for legitimate and non-FMLA retaliation reasons. Defendant additionally claims, that the

person who identified Plaintiff for termination as part of a company-wide reduction-in-force had no knowledge of his FMLA leave when making the termination decision.

In response, Plaintiff contends that AT&T hired an interim consultant to perform Plaintiff's job during the leave period, and this consultant was subsequently granted a permanent position with AT&T, thereby replacing Plaintiff. Additionally, Plaintiff argues that AT&T hired another consultant during the following year, which brought AT&T to the same employment capacity as AT&T was at before Plaintiff was terminated.

AT&T's motion for summary judgment has been fully briefed by the parties. Having reviewed the parties' briefs and accompanying exhibits, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in the written record, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.

## II. FACTUAL BACKGROUND

In July of 2002, Plaintiff began experiencing severe pain and impaired range of motion in his back and had spinal surgery on September 6, 2002. Plaintiff began working for AT&T in November 2002, when the company was originally Callisma, which was later purchased by SBC, and eventually became AT&T. Plaintiff was an at-will salaried employee and served as a Manager of Professional Services.

Plaintiff's supervisors had given him multiple poor performance reviews and

counseled him on his poor performance in 2004. In 2005, he was placed on a performance improvement plan. Defendant continued to set improvement goals for Plaintiff in 2006 and 2007. Plaintiff demonstrated marked improvement in his performance in 2007, and satisfactorily completed most, if not all, of his assigned duties during the period just prior to his FMLA leave. Brett Blackwell served as Plaintiff's supervisor, and Dave Mingo supervised Mr. Blackwell.

In January 2008, Plaintiff had his second back surgery to repair his spine and subsequently took approved FMLA leave until March 24, 2008. A January 9, 2008 e-mail from Plaintiff to several of Defendant's employees, including Mingo, stated that Plaintiff "will be out on medical leave until [March 17, 2008] (tentative)." (Pl.'s Resp. Ex. 12.) Prior to taking his leave, Plaintiff transitioned his duties and responsibilities to consultant Jim Sitek, another AT&T employee and good friend of Plaintiff. During Plaintiff's leave, Russ Rusch began supervising Mr. Blackwell and reported to Dave Mingo. During the same leave period, Dave Mingo received a directive to terminate fourteen of the 225 employees in his department based on Defendant's economic challenges. As part of this directive, Mingo terminated two of the fourteen employees in Blackwell's group.

Plaintiff returned to work on April 3, 2008 and resumed his duties. On April 10, 2008, Blackwell informed Plaintiff that his position had been eliminated and that Plaintiff would be laid off effective June 2008. Mingo is the person who identified Plaintiff and one other employee for termination from Blackwell's group. Defendant

claims that Plaintiff's human resources duties could be covered by Blackwell, and Sitek could cover Plaintiff's project related activities, and therefore, Plaintiff's position could be eliminated. Mingo claims he was not aware of Plaintiff's FMLA leave when he made the termination decision, but he did factor Plaintiff's allegedly poor job performance in his decision.

After being identified for termination, Defendant gave Plaintiff the option of receiving a severance package or a sixty-day paid job search. Plaintiff chose the job search and found another position with Defendant.[1] Plaintiff claims that his new position paid less and required him to travel more to acquire new clients. In July 2009, approximately one year after Plaintiff's job position was eliminated, Sitek was promoted to a Manager of Professional Services position. Plaintiff claims that Sitek was promised this position (to replace Plaintiff) at the time Plaintiff's job position was eliminated in 2008.

In December 2008, Sitek hired a new consultant, Jason Butzsta, and Plaintiff's old department reached the same number of employees that it had when Plaintiff was working in it. More importantly, Plaintiff claims that the company-wide reduction-in-force and Plaintiff's alleged poor job performance are merely pretext for Defendant's retaliation against Plaintiff for taking FMLA leave.

Defendant does not deny hiring Butzsta after terminating Plaintiff. Defendant

---

[1] Plaintiff was terminated from this new position in July 2010, but this termination is not relevant to the present action.

states this decision was made months after the reduction-in-force, and the new hiring was made to meet a new client need. Defendant additionally claims that the new consultant position required specialized skills, which Plaintiff did not have, and Plaintiff did not apply for the new position.

### III.  ANALYSIS

**A.     Standards Governing Defendant's Motion**

Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials

---

[2] On December 1, 2010 a new version of Fed. R. Civ. P. 56 took effect. Due to the parties' submission of summary judgment motions prior to the effective date, the Court's opinion and order is decided under, and cites, the old rule.

in its own pleading," but "must-by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks and citation omitted).

**B.     Plaintiff's Retaliation Claim Fails as a Matter of Law**

It is unlawful for an employer to discharge, retaliate, or in any way discriminate against an employee who has taken an approved FMLA leave. 29 U.S.C. § 2615(a)(2); *Hunter v. Valley View Local Schools*, 579 F.3d 688, 689 (6th Cir. 2009). An employee may establish a prima facie case for retaliation against an employer by demonstrating

> (1) he availed himself of a protected right under the FMLA by notifying [his employer] of his intent to take leave, (2) he was adversely affected by an employment decision . . . and (3) the proximity in time between [employee's leave] and [the adverse employment decision] constitutes indirect evidence of a causal connection between his exercise of a right under the FMLA and the adverse employment decision.

*Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001). Proximity in time between the leave and adverse employment decision is indirect evidence of retaliation. *Id.* at 315. When indirect evidence is relied upon for a retaliation claim,

courts apply the *McDonnell Douglas* burden-shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

Under the *McDonnell Douglas* standard, initially, an employee must prove a prima facie case of retaliation. *Id.* at 802, 93 S.Ct. 1817. Once an employee has made a prima facie case of retaliation, the burden then shifts to the employer to present a legitimate non-discriminatory reason for the adverse employment decision. *Id.* at 802-04, 93 S.Ct. 1817. If the employer successfully presents a non-discriminatory reason, then the *McDonnell Douglas* presumptions and burdens are no longer relevant, and the employee must prove the employer's intentional discrimination by a preponderance of evidence. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2749 (1993). The employee may meet the preponderance of evidence burden by showing that the legitimate non-discriminatory reasons offered by the employer were merely pretext to mask the intentional discrimination.[3] *Id.*

---

[3] Some Circuits, including the Sixth Circuit, have replaced the *McDonnell Douglas* standard for discrimination cases with a more lenient summary judgment standard "under which a plaintiff . . . can rebut the defendant's legitimate non-discriminatory reason not only through evidence of pretext (the traditional *McDonnell Douglas/Burdine* burden), but also with evidence that the defendant's proffered reason is only one of the reasons for its conduct (the mixed-motive alternative)." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008); Gibson v. City of Louisville, 336 F.3d 511, 512-513 (6th Cir. 2003) (extending the mixed-motive alternative standard to FMLA retaliation claims); *Richardson v. Monitronics International, Inc.*, 434 F.3d 327 (5th Cir. 2005). The mixed-motive alternative is only used when a plaintiff has brought a mixed-motive claim, meaning, the plaintiff has alleged that "both legitimate and illegitimate reasons motivated the employer's decision." *White v. Baxter*, 533 F.3d at 396. Here, Plaintiff has brought a single-motive claim based on retaliation and directly challenged Defendant's reasons for his termination. Therefore, the unique mixed-motive alternative standard does not apply. *Id.* at 391.

**1. Plaintiff has established a prima facie case of retaliation**

Here, it is undisputed that Plaintiff took an approved FMLA leave and Defendant was aware of Plaintiff's scheduled leave, and therefore, Plaintiff has met the first requirement for an FMLA retaliation claim.[4] The parties also agree that the proximity of Plaintiff's return from FMLA leave and his selection for termination is sufficient indirect evidence to meet the third requirement in establishing a prima facie case of retaliation. *Skrjanc*, 272 F.3d at 315.

Defendant briefly argues that Plaintiff may not have met the second requirement, because he may not have been adversely affected by the decision to terminate him. In support of this argument, Defendant states that Plaintiff was given sixty paid days after the termination decision, during which he sought and obtained new employment with Defendant. Defendant states in its brief that Plaintiff's new position "had comparable earnings and benefits." (Def.'s Am. Mot. for Summ. J. at 12.)

Reassignments and transfers without a change in pay or benefits do not constitute adverse employment actions. *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d

---

[4] Although Defendant clearly had knowledge of Plaintiff's FMLA leave, Defendant claims that Mingo, the person who actually decided to terminate Plaintiff, did not himself have knowledge of Plaintiff's FMLA leave. (Mingo Aff. 2.) Defendant has appropriately argued that an employer cannot be held liable for FMLA retaliation when the decision-maker has no knowledge of the FMLA leave. *See Mulhall v. Ashcroft*, 287 F.3d 543, 551-54 (6th Cir. 2002). Plaintiff has countered Mingo's affidavit with his January 9, 2008 e-mail, in which he states he would be "out on medical leave" until approximately March 17, 2008. (Pl.'s Resp. Ex. 12.) Even though the e-mail does not specifically use the terms "FMLA leave", viewing the conflicting evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's e-mail is sufficient to raise an issue of fact as to whether Mingo had knowledge of Plaintiff's FMLA leave. *Pack,* 434 F.3d at 813.

789 (6th Cir. 2004). In the present matter, however, Defendant decided to *terminate* Plaintiff in April 2008, not *transfer* Plaintiff to another job. The fact that the termination was not effective until June 2008, and the fact that Plaintiff chose to search for and obtained another position before the termination effective date in lieu of receiving a severance package, are irrelevant to the Court's analysis as to whether or not the termination decision itself was adverse.[5]  *See Taylor Warehouse Corp. v. N.L.R.B.*, 98 F.3d 892, 899 (6th Cir. 1996) (holding that an adverse employment claim becomes actionable when the employee receives notice of the adverse action, not when the adverse action becomes effective). The decision to terminate Plaintiff's job is indisputably an adverse employment decision, and Plaintiff has met the second requirement in establishing a prima facie case of retaliation. *See id.* at 798.

**2. Defendant has presented legitimate non-retaliatory reasons for termination**

Having found that Plaintiff has established a prima facie case of retaliation through indirect evidence, the Court shifts its analysis to Defendant's burden to present a legitimate non-discriminatory reason for deciding to terminate Plaintiff. *McDonnell Douglas Corp.,* 411 U.S. at 802-04. "Defendant's burden is only one of production, not persuasion." *Huck v. Greenspan*, No. 06-cv-14562, 2009 WL 224682, at *13 (E.D. Mich.

---

[5] Even if the Court considered Plaintiff's new position in this analysis, Plaintiff states by sworn affidavit, and Defendant does not deny, that Plaintiff earned less in his new position. An employment decision resulting in the employee receiving a reduction in pay is an adverse employment decision. *White v. Burlington*, 364 F.3d at 798.

Jan. 30, 2009) (citing *Texas Dep't. of Community Affairs v. Burline*, 450 U.S. 248, 254-56, 101 S.Ct. 1089, 1094-95 (1981).

Defendant has proffered two reasons for the decision to terminate Plaintiff. First, Mingo states through his sworn affidavit that he was required to terminate fourteen employees in his department as part of a company-wide reduction-in-force. Mingo decided to terminate Plaintiff, because Plaintiff's duties could be absorbed by other current employees. Additionally, Mingo states that Plaintiff's selection for termination was also based on Plaintiff's poor job performance relative to the other employees in Plaintiff's workgroup.

This Court has recently held that a reduction in force, like the one Mingo was required to do, qualifies as a legitimate non-discriminatory reason for terminating an employee. *Huck*, 2009 WL 224682, at * 13. Additionally, poor job performance relative to the performance of other employees also qualifies as a legitimate non-retaliatory reason for termination. *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996); *See also Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791, 802 (6th Cir. 2007). Therefore, Defendant has met its burden, and Plaintiff has the burden to show that the proffered reasons for Plaintiff's termination are mere pretext. *McDonnell Douglas Corp.,* 411 U.S. at 804-06.

**2. Plaintiff has failed to show pretext**

A plaintiff may show pretext by "showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter*, 533 F.3d at 393. Here, Plaintiff argues that the reduction-in-force itself and his selection for it have no basis in fact. For the reasons that follow, the Court does not find merit in Plaintiff's arguments.

Although Plaintiff does not dispute the existence of a company-wide reduction-in-force directive, he does claim that his specific job position was never actually eliminated under the directive. Plaintiff claims that because Sitek took over Plaintiff's job duties and eventually gained Plaintiff's old title as Manager of Professional Services, that Plaintiff's position was never actually eliminated in the first place. Plaintiff further argues that Sitek was meant to replace Plaintiff "from the very beginning." (Pl.'s Resp. at 17.) Defendant does not deny that Plaintiff's duties were initially split between Blackwell and Sitek, and it is undisputed that Mingo reduced the total number of employees in Blackwell's group by two, as part of the company-wide reduction-in-force directive.

Spreading a terminated employee's duties among remaining employees, without the hiring of any new employees, does not constitute discriminatory replacement. *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (1992). At the time Plaintiff was identified for termination, both Sitek and Blackwell were already employed by Defendant. Because Sitek and Blackwell, and eventually Sitek alone, absorbed Plaintiff's duties without the

11

addition of any new employees, Plaintiff cannot support a claim of retaliatory replacement by Sitek. *Id.*

Plaintiff attempts to show that his office actually maintained the same number of personnel as it had during his employment, because Defendant hired Butzsa as an additional consultant within Blackwell's group after Plaintiff was terminated. Although Plaintiff claims Butzsa was hired six months after Plaintiff's selection for termination, Defendant's sworn affidavits state Butzsa was not hired until December 2008. (Pl.'s Resp. 13; Mingo Aff. ¶ 10; Blackwell Aff.¶ 3; Rusch Aff. ¶ 11.) Plaintiff provides no evidence to show that Butzsa was hired any earlier than December 2008, which is eight months after Plaintiff's selection for termination in April 2008. Additionally, Defendant has submitted three sworn affidavits stating Butzsa had specialized training, which Plaintiff did not have, and Butzsa was hired to meet an increased client demand. (Mingo Aff. ¶ 10; Blackwell Aff.¶ 3; Rusch Aff. ¶ 11.) Based on the timing of Butzsa's hiring, his specialized skills, and Defendant's increased needs, Plaintiff cannot use Defendant's hiring of Butzsa as evidence of FMLA retaliation. *Lilley*, 958 F.2d at 752 (holding that hiring a new employee to meet an increased business need nine months after a plaintiff's termination is in no way relevant in determining whether the plaintiff's termination was based on discrimination).

Because Plaintiff has failed to present any factual evidence to refute Defendant's claim that Plaintiff's duties could be, and were, performed by other current employees, he

fails to meet his burden of showing Defendant's directive to reduce its number of employees was pretext. *White v. Baxter*, 533 F.3d at 393. Therefore, Plaintiff's claim of pretext as to the reduction-in-force fails.[6] *Id.*

Plaintiff additionally argues that there is no basis in fact for Defendant's claim that he was selected for termination based on his job performance. Although both parties go to great lengths to argue about Plaintiff's job performance history in general, the critical issue for the Court, as Defendant has presented as its reason for Plaintiff's selection for termination, is really Plaintiff's job performance relative to other employees within his workgroup. Mingo, who made the decision to terminate Plaintiff, based his decision on the belief that Plaintiff's skill set was not required in Detroit and that Plaintiff "was not at the level of most of our other managers." (Mingo Dep. 25:1 - 26:1, June 29, 2010.) Mingo has stated through a sworn affidavit that he evaluated Plaintiff "against all second level employees that reported to Brett Blackwell" (Mingo Aff. ¶ 4.)

Plaintiff had multiple documented performance deficiencies, and although he had demonstrated marked improvement in 2007 before taking his FMLA leave, he fails to provide any evidence that he was performing at or above the level of his peers or that his skills were needed in the Detroit office. Plaintiff has the ultimate burden of producing

---

[6] Having already established that a reduction-in-force is a legitimate non-retaliatory reason for termination, and having established that Defendant's reduction-in-force was not pretext, the Court could stop its analysis here and grant Defendant's motion. Nevertheless, the Court will continue to address Plaintiff's claim regarding his job performance.

evidence from which the trier of fact could reasonably reject Defendant's offered reasons for his termination. *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003). Because Plaintiff has failed to provide sufficient evidence to show that his termination based on a directed termination and his job performance was pretextual, summary judgment is appropriately entered for Defendant. *White v. Baxter*, 533 F.3d at 392.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's amended motion for summary judgment [Dkt. # 16] is GRANTED and Plaintiff's claim is DISMISSED with prejudice.

Let judgment be entered accordingly.


S/Gerald E. Rosen
Chief Judge, United States District Court

Dated: August 18, 2011


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 18, 2011, by electronic and/or ordinary mail.

S/Johnetta Curry-Williams for Ruth A. Gunther
Case Manager